# Ives *against* Niles.

Whether a notice to take depositions be rightly served upon the party or his attorney depends upon the rule of court on the subject. And, in the absence of any proof of what the rule is, it will be presumed that the court below decided rightly on the subject.

It is not a valid objection to the admission in evidence of original entries, that the book in which such entries are made, contains other charges which are admitted not to be original.

As between a warrantor of title and his warrantee, a verdict and judgment in ejectment against the warrantee, upon an adverse title, of the pendency of which the warrantor had notice, is conclusive; and, upon the trial of any subsequent issue between them, the warrantor will not be permitted to impeach such recovery.

Upon an agreement between a vendor and vendee of land, that the contract shall be rescinded upon the happening of a certain event, an offer of the vendor after the event has happened, to deliver up the bonds for the purchase money which he had received, without being accompanied by an offer to refund the money which he had also received, will not entitle him to any advantage upon the trial of an issue involving the rights of the parties to such agreement.

By an agreement for the sale and purchase of land, the vendee covenanted to pay a certain sum, part of the purchase money, at a certain future day, if, in the mean time, he were not evicted from the land; he was not evicted before, but was after that time, and before suit brought for the recovery of that sum. *Held* that he might set up the eviction as a defence in such suit.

A warrantee, who has been evicted from the land purchased by him, and has recovered compensation in an action against the warrantor, is not bound to reconvey the title.

If a case should arise in which, upon a recovery by a warrantee against a warrantor, justice should require a reconveyance by the warrantee of the title, the mode of enforcing it would be by an imposition of terms upon the party as to the receipt of the fruits of his judgment.

ERROR to the common pleas of *Tioga* county.

This was an action of debt by Cornelius Ives, for the use of William Willard, against Aaron Niles, upon a note which had been given in consideration of the conveyance of a tract of land. All the facts of the case, which are material to the points raised and decided, are fully stated in the opinion of the court; which was delivered by

KENNEDY, J.—The first error has not been insisted on; and it is certain it could not have been sustained if it had.

The second error is an exception to the opinion of the court in admitting the deposition of Cornelius Ives. First, because that some of the interrogatories, put by the party taking the deposition, to his witness, are leading; and, second, because the notice for taking it was served upon the attorney of the plaintiff in error and not upon himself. The first reason has not been insisted on ; and, indeed, it does not seem to exist in point of fact; for none of the interrogatories appear to be drawn up with a view and in such a form as to indicate plainly to the witness what answer the party wished him to give,

[Ives v. Niles.]

Then, as to the second reason, it has not been shown that the service of the notice on the attorney was not in conformity to the rule of the court below; and, if so, it was right. It seems that there is no written or printed rule in being on the subject; but it is alleged, that such service is in conformity to the uniform practice. Of this, the court below were more competent to judge than we can be; and they having approved the service, we cannot condemn it.

The third error is also an exception to the opinion of the court in admitting the account book of the defendant in error, called his book of original entries, to be read in evidence to the jury. The objection made to this is, that the book, although it contained original entries, yet it also contained entries admitted not to be original, but transcribed from something else. These latter entries, however, were not offered to be read in evidence, nor were they admitted. We think the objection quite too nice and refined. If it were to prevail it would destroy the practical use of the rule in regard to the admission of such evidence; because, if no entries were permitted to be given in evidence to a jury but such as shall be established, at least by the oath of the party, to have been made in a book containing nothing but original entries, the most of such evidence would be excluded; for, I apprehend, there are but few such books. It might as well be insisted on that no entries should be admitted in evidence unless they appeared to be made in a book where every entry throughout the whole book would be admissible against the party thereby charged, upon the oath of the party making the charge, provided it were in his hand writing. Now, if this were to be allowed, it might lead to a preliminary examination of every man's account contained in the book, in order to ascertain first, before it could be admitted to be used as evidence to the jury, whether all the entries contained in it were original or not. The inconvenience and delay that would necessarily attend the application of such a test are a sufficient answer to the ground of the exception here; and it is certainly every day's practice to admit original entries made in a book containing transcribed entries, as was the case in this instance, to be read in evidence to the jury. Besides, if it be the book in which the party has been accustomed to make all his original entries for the time being, it does not destroy or change the character of the book as a book of original entries, and render it less worthy of credit, that he has occasionally made other entries in it; nor is any good reason perceived why it should, for it is only those entries proved by his oath to be original, that are rendered admissible; and the circumstance of his admitting that there are certain entries among the rest made against the same person, which are not original, and which he designates, would rather seem to add to his credibility and that of his book, than to detract from either. We therefore think the objection to the admission of the book in evidence has not been sustained.

[Ives v. Niles.]

The fourth error has been given up by the counsel for the plaintiff.

The fifth error is a bill of exception to the opinion of the court in rejecting evidence offered by the plaintiff, for the purpose of showing, notwithstanding the eviction of Niles, from the land sold and conveyed to him by deed containing a covenant of general warranty of the title from Ives the plaintiff, under a recovery in an action of ejectment brought by Martin and Spencer, in which the plaintiff here as well as the defendant were defendants, that the title passed by Ives, under his deed of conveyance to Niles, was still a better title than that upon which Martin and Spencer recovered the land; and therefore Niles ought to pay the amount of the notes here in suit, which were given to secure the payment of the consideration to be paid for the land by Niles to Ives. Now, no rule is better settled in the law than, that the warrantor of the title, as between him and his warrantee, or those claiming under the latter, shall not be permitted to gainsay the propriety and the justice of the recovery of the land from the warrantee, under an adverse title alleged to be paramount to that of the warrantee, where the warrantor has been a party himself to the ejectment in which the recovery is had, or has had notice of the action being brought from the warrantee, in time to enable him to defend if he pleases. The warrantor is estopped by the recovery in such case from denying that it was under a better title the recovery was had, than that which he passed to his warrantee; and this being the effect of the law in regard to the contract of warranty between the parties, it must be taken that they had a view to it as being so at the time of entering into the contract. The evidence was therefore properly rejected.

The sixth and seventh, being the only remaining errors, are exceptions to the opinion of the court upon the first and fourth points, submitted by the counsel of the plaintiff in error to the court, for their answers to them by way of instruction to the jury. They have both relation to the effect and operation of the agreement between the parties, bearing date the 20th of March 1819, which is in the following words, to wit: " Article of agreement made this 20th day of March 1819, between Cornelius Ives and Aaron Niles. The understanding of the parties is, that the deed, bearing date with this article is, that if the title should be in the hands of Uriah Spencer or the Martins, then the said Niles is to take no advantage of the said Ives, in consequence of a warrantee deed of one hundred acres of land, stipulated in said deed; and all obligations to the amount of 600 dollars given to Cornelius Ives, is to be void and of none effect. And it is the further understanding, that if the title is not found in Spencer or the Martins, by the first of October next, then the said Niles is to pay the 600 dollars, if the said Ives shall require it, as fast as the notes shall become due. It is further understood, that the above mentioned deed is to be given up to Cornelius Ives by the 1st of October next, if Spencer, Strech, Martin, or

[Ives v. Niles.]   .

Murdock, should have any title invested in the lands, that the above mentioned deed specifies.

"As witness, our hands and seals, the 27th day of March, 1819.

"CORNELIUS IVES, [L. S.]
"AARON NILES,    [L. S.]

"John Ives, 2d.

"Jesse Lacy."

In the first point submitted by the plaintiff's counsel, the answer to which is excepted to, the court was requested to instruct the jury, " that if they believed that after the 1st of October 1819, on the eviction of Aaron Niles by the judgment in favour of Martin and Spencer, Cornelius Ives offered to deliver up the notes and requested a reconveyance of the land to him, and Aaron Niles refused or neglected to do it, the defence set up, that the consideration has failed, cannot avail him in this action." The court answered to this that they thought otherwise.

If the judgment in favour of Martin and Spencer, which is here alluded to, had been rendered before the 1st of October 1819, Niles, according to the express terms of the agreement, if he had sought a discharge from the payment of the 600 dollars or his notes, would have been bound to have reconveyed the land to Ives; and had he refused to do so, upon request, and being offered a return of his notes by Ives, there would have been some show of reason, at least, for holding him bound to pay the notes. But the agreement fixes the 1st of October 1819, as the utmost limit, within which he should either have the right or be bound to reconvey; and then, only, in the event of its having been determined that Martin and Spencer's title to the land, embraced by it, was good: but, otherwise, he was bound to go on and pay, if required by Ives. It was not determined, however, until nearly a year after the first of October 1819, that Martin and Spencer's title was good. During this interim, Niles had been required by Ives to pay, and had paid a considerable portion of the 600 dollars. Now, if after the eviction of Niles from the land, by the recovery of Martin and Spencer, it had been so, that Niles had paid no part of the consideration for the land, and he had refused to reconvey the title, such as it was, which he had received from Ives, upon the request of Ives, accompanied by an offer to deliver up to Niles his notes, there might have been some reason for saying that he had deprived himself of the right, to object the want or failure of consideration for not paying the notes. But this was not the case, and unless Ives had offered to refund all he had received from Niles, and to cancel his notes, Ives had not the slightest imaginable colour of claim, even in equity, to demand a reconveyance of the land upon his offering merely to give up to Niles his notes without more. And indeed it appears from the evidence, that Ives, so far from offering to repay what he had received, after admitting that Niles had paid him part of the consideration for the land and that he had offered to convey it back to him, if he would

only return to Niles the one half of what he had received from him, that he told Niles that it was not in his power to do so, for the property he had received of him had gone to pay his father's debts, and he had nothing to do it with; and concluded by saying that Niles had offered to do what was very fair. Under these circumstances it would have been an outrage upon every principle of both law and equity to have charged the jury as requested in this first point. The court were, therefore, right in refusing to do so.

By the fourth point the court were requested to instruct the jury "That by the contract of the 20th of March and closed the 27th of March 1819, between Ives and Aaron Niles, said Niles was bound on the 1st day of October 1819 to pay the 600 dollars, the amount of the notes, as they respectively became due, whether the validity of Spencer's title was determined or not, he having agreed to limit that as the time." To this the court responded that they thought otherwise.

Now, although Niles was bound by the tenor of his agreement to go on and pay by the 1st day of October 1819, when the first 200 dollars of the purchase-money became payable, unless it were then determined that Martin and Spencer's title to the land was good; yet he was to have the full benefit of his covenant of warranty for the title from Ives, which, as soon as he should be evicted from the land by force of the title of Martin and Spencer, gave him a clear right not only to stop all further payment of the residue of the consideration-money, but entitled him to recover back from Ives what he had previously paid him. The object of this agreement was, in the first place, to prevent Niles from setting up Martin and Spencer's title for the land as a defence against the payment of his notes until it should be judicially determined that their title was better than that which he received from Ives. And in the next place, it would seem from the provisions of the agreement, as if the parties had an idea that Niles, in case he should be evicted from the land by the title of Martin and Spencer, would, under the covenant of warranty contained in the deed of conveyance made by Ives to him, be entitled to recover damages, or, at least, might be so entitled, beyond the amount of the consideration paid by Niles for the land; and to guard against this, for a time, it was provided that if a judicial decision should be had on the title of Martin and Spencer before the 1st of October 1819, the time appointed for the payment of the first note, that the sale of the land should be annulled, and the parties placed in the same relation to each other, as if it had never been made. The notes were to be void and of none effect. Niles was to take no advantage of the covenant of warranty, but was to give up the deed to Ives, which, in order to have met fully the design of the parties in this respect, would have required a reconveyance in writing at least. It is clearly the plain import of the agreement, that if such determination, in respect to the title, did not take place before the time that the first note became payable,

then Niles was to pay and not to set up the outstanding title of Martin and Spencer as a defence against the payment of the notes, until he should be evicted by it from the land, when he was to have it in his power to resort to the covenant of warranty contained in the deed, either by way of defence, or by action to recover back what he had paid.  This was, in effect, an arrangement between them, that as long as Niles was permitted to hold and to enjoy the land under the conveyance from Ives, he should not set up the outstanding claim or title of Martin and Spencer as a defence to the payment of the notes.  It was not only competent for the parties to make such an agreement, but in its nature it appears to be both rational and equitable; because, as long as the buyer continued to hold and to enjoy the full benefit of what he agreed to pay his money for, it was nothing but fair that he should continue to pay for it.  But the moment he became deprived of this benefit, all obligation arising from a consideration purely equitable may be considered as having ceased.  This being the case, then, nothing short of a positive and express engagement, on his part, in the agreement, to pay whatever should remain unpaid of the notes, notwithstanding the eviction, ought to be construed into a legal obligation to do so.

The eviction then, having taken place long before the commencement of this suit for the recovery of the notes, it follows, from the view which has just been taken of the agreement and its effects, that it presents no obstacle to the defendant's setting up a failure of the consideration given for the notes, as a defence to the payment of them.  In short, the operation of this agreement having been determined by the eviction, the parties may and are to be considered as standing upon the same footing with each other, in regard to the notes in suit, as if the agreement had never been made.

But, admitting that Niles had, by an express covenant, deprived himself of the benefit of setting up his equitable defence to the payment of the notes, what is there to prevent him from setting off his claim or demand against Ives for the breach of his covenant of warranty?  The terms of our defalcation act are, clearly, sufficiently general and comprehensive to embrace it.  This, indeed, does not seem to be denied; but it is objected, that as Niles, after his eviction, conveyed all his right to the land to Spencer, who recovered it from him, he also thereby conveyed or assigned his right of action against Ives for his breach of warranty.  This objection is not well founded, for it is settled that a right of action on a covenant cannot be assigned at law.  Lewes *v.* Ridge, *Cro. Eliz.* 363; 4 *Bos. & Pull.* 163.  And hence it has been ruled, that a covenant broken in the time of the lessor cannot be made the foundation of an action by his assignee.  Anon., 3 *Leon.* 51, *pl.* 72; Canham *v.* Rust, 8 *Taunt.* 227.  In the present case, the covenant of warranty was broken before the transfer of the land by Niles to Spencer; and the transfer not purporting on its face to assign or transfer any right of action which Niles, previously thereto, had acquired against Ives, it is certain that the transfer

[Ives v. Niles.]

of the land by Niles to Spencer did not assign his right of action upon the covenant of warranty, either in law or in equity. There was nothing, therefore, to prevent Niles from setting off his claim, founded upon the breach of the covenant of warranty, against the amount of the notes.

But it is further contended that Niles has deprived himself of his right to recover upon the warranty, because he has conveyed the land to Spencer. The argument advanced in support of this is, that Niles, upon receiving payment or satisfaction from Ives for the damages sustained by reason of the breach of the covenant of warranty, would be bound in law as well as in equity to reconvey the land to Ives; but, having conveyed it to Spencer, he has rendered himself unable to do so. No authority has been shown or cited, going to show that there would be any legal obligation upon him to reconvey, after receiving compensation for the injury sustained by reason of the breach of the covenant of warranty. Neither am I aware that any exists; indeed, I feel satisfied that there is none. Such a notion is entirely repugnant to the principles of the English common law. Because, after eviction, the party evicted being no longer seised of the land, could neither convey the land nor yet assign his title to it, so as to enable his assignee or grantee to maintain an action of ejectment for the recovery of the land again; and, hence, it could never have entered into the mind of any one to conceive that the warrantee, after eviction, upon receiving compensation from the warrantor for the injury thereby suffered, was bound to reconvey to him. The party evicted, it is true, may in England, and so he may here, renew the contest for the land, by bringing a new action, to recover it back if he will; but this depends entirely upon his own will. He cannot be compelled to do so; a court of equity will not interpose for this purpose: by the law of his contract he is not bound to do so; and one trial is conclusive upon his warrantor if the land be lost, and he has had due notice to defend; and it belongs to equity as well as the law to discourage the renewal of litigation after the matter in dispute has been fully investigated, and decided by a competent tribunal, where every thing that could have the least bearing upon it was admissible and might have been adduced. But it is said, that it was settled by this court, in the case of Bender *v.* Fromberger, 4 *Dall.* 436, that after judgment obtained for the damages occasioned by the breach of the warranty, the court will compel the plaintiff, upon receiving the money recovered, to reconvey the land. The question, however, was not raised directly in that case; and cannot be said to have been fully considered and decided by the court: the plaintiff rendered it unnecessary by his voluntary offer to do so. And the only thing there in relation to this point is said by the chief justice in delivering the opinion of the court, (in the note to 437.) He says: "if the plaintiff recovers in the present suit, it is in our power, by imposing terms upon him, to do justice to the defendant. Indeed, the plaintiff has made our interference unnecessary,

v.—2 R

[Ives v. Niles.]

by a voluntary offer to execute a conveyance to the defendant of all his right, upon receiving the damages awarded by the jury. He was not obliged (as the defendant's counsel allege) to tender this conveyance before he brought the suit: it is sufficient if the conveyance is executed when the defendant pays the damage." The court, however, it seems, did decide that such conveyance was not necessary to be executed before the receipt of the money recovered; which was, in effect, deciding that the defendant had no right at law to demand it. And the most that can be inferred from what is said in regard to the making of such conveyance is, that the court, in their discretion, when the circumstances of the case seem to require it, may interfere after the recovery; and, by an exercise of their equitable powers, compel the plaintiff, in order to do justice to the defendant, to convey his right to the land to him. But where the circumstances of the case, istead of going to show an equity on the part of the defendant to claim such reconveyance, rather tend to show that he has forfeited all claim, which otherwise he might have had in equity to it, it cannot be pretended that the court is bound to interfere. But even suppose the plaintiff were to put it out of his power to make a conveyance, as he has done here, and the court should think that the defendant ought to have a reconveyance of the right to the land which he conveyed to the plaintiff, upon his paying the plaintiff the damages sustained by the eviction, still, upon the most favourable construction for the defendant of all that is said in Bender and Fromberger, the plaintiff would be entitled to a verdict and judgment in his favour, the same as if he still retained the right in himself. The reconveyance would be a matter to be decided afterwards by the court when the money recovered comes to be paid. In the present case, however, it appears from the evidence not to have been the fault of Niles that Ives was not reinvested with his former right to the land long since; for, according to his own admission, as testified to by Richard Mitchell, Niles was solicitous to get up his notes, and to convey back to Ives upon receiving one half only of what he had paid him; but Ives alleged inability to repay. What was Niles to do? For, if it was true, as Ives alleged, that he was unable to repay, Niles could effect nothing by suing him, unless it had been to incur costs, which he might have had to pay, if Ives proved unable. It is sufficient to say, that Niles appears to have done nothing at any time with a view to prejudice Ives in any respect, but to have done all that he did do under compulsion, as it were, imposed upon him either from the inability or the unwillingness of Ives to do what he was most clearly bound to have performed in order to do justice to Niles.

Judgment affirmed.

*Parson* and *Williston*, for plaintiffs in error.
*Donell* and *Greenough*, for defendants in error.